UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
*In re*:                                                                             Case No. 19-10724 (JLG)
                                                                                     Chapter 7
Anthony Serignese,

                                                        Debtor.
----------------------------------------------------------------x

# MEMORANDUM DECISION AND ORDER DENYING REQUEST FOR LEAVE TO CONDUCT EXAMINATION UNDER RULE 2004 OF THE FEDERAL RULES OF <u>BANKRUPTCY PROCEDURE</u>

**<u>A P P E A R A N C E S</u>**:

MINTZ & GOLD, LLP
*Attorney for the Debtor*
Andrew R. Gottesman, Esq.
600 Third Avenue, 25th Floor
New York, NY 10016

MCGRAIL & BENSINGER LLP
*Co-counsel to ALQ LLC, Ismael Alba and Karina DeMarco*
Ilana Volkov, Esq.
888-C 8th Avenue, #107
New York, New York 10019

KATZ MELINGER PLLC
*Co-counsel to ALQ LLC, Ismael Alba and Karina DeMarco*
280 Madison Avenue
Suite 600
New York, New York 10016

NOT FOR PUBLICATION

**HON. JAMES L. GARRITY, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

Introduction

The matter before the Court is the motion ("Motion") of ALQ LLC ("ALQ"), Ismael Alba ("Alba") and Karina DeMarco ("DeMarco" and, together with ALQ and Alba, collectively, the "Movants") for an order authorizing the oral examination of, and requiring production of documents by, Anthony Serignese, the chapter 7 debtor herein (the "Debtor"), pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). *See Motion for an Order Authorizing Oral Examination Of, and Requiring the Production of Documents By, Anthony Serignese Pursuant to Fed. R. Bankr. P. 2004 and 9016* [ECF No. 8][1] (the "Motion"). The Debtor objects to the Motion. *See Debtor's Objection to Motion by ALLQ [sic] LLC, Ismael Alba and Karina DeMarco for an Order Authorizing Oral Examination and Requiring the Production of Documents Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016* [ECF No. 11] (the "Objection"). For the reasons set forth herein, the Court sustains the Objection and denies the Motion.

**Jurisdiction**

The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

---

[1] Citations to "ECF No. ____" refer to entries on the electronic docket in this case, No. 19-10724.

1

19-10724-jlg    Doc 14    Filed 06/03/19    Entered 06/03/19 21:10:47    Main Document
                                    Pg 3 of 11

NOT FOR PUBLICATION

**Facts**

The facts are not in dispute. On March 7, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court. *See Voluntary Petition for Individuals Filing For Bankruptcy* [ECF No. 1] (the "Chapter 7 Petition"). On March 8, 2019, Deborah Piazza, Esq. was appointed to serve as the chapter 7 trustee (the "Trustee") of the Debtor's estate. The Debtor's case is currently listed as a "no asset" case. Objection ¶ 1. As relevant, the Debtor's Schedules show that as of the Petition Date, his assets include membership interests in the following three limited liability companies:

    Casual Hospitality LLC ("Casual Hospitality") – 24% interest;

    Meat Milk & Grapes LLC – 100% interest; and

    Casual Hospitality Management LLC ("Casual Hospitality Management") – 50% interest.

*See* Chapter 7 Petition, Schedule A/B Property, ¶ 19. Alba and DeMarco are investors in and members of Casual Hospitality. Motion ¶ 5. Casual Hospitality Management is the "Class A" Managing Member of Casual Hospitality, and the Debtor is the "tax matters" partner of Casual Hospitality. *Id*.

ALQ, as landlord, is party to two lease agreements that are relevant to the Motion. First, ALQ and the Debtor are party to an agreement dated September 1, 2016, for the lease of a residential apartment (#2F) (the "Apartment Lease") in a building located at 509 East 6th Street, New York, New York 10013 (the "Building"). *Id*. ¶ 7. Prepetition, the Debtor defaulted under the Apartment Lease, and on or about January 30, 2019, ALQ obtained a default judgment against the Debtor in an amount in excess of $50,000 (the "Judgment").[2] Second, pursuant to an

---

[2] A copy of the Judgment is annexed in Exhibit B to the Objection.

2

agreement dated May 18, 2016 (the "Retail Lease"), ALQ leased to Casual Hospitality certain ground floor retail and related cellar space in the Building (collectively the "Premises").[3] Casual Hospitality managed a restaurant at the Premises. In or around February of 2017, it defaulted under the Retail Lease. *Id.* ¶ 6. The Debtor and his business partner, Peter Kane, guaranteed Casual Hospitality's obligations under the lease (the "Retail Lease Guaranty"). Objection ¶ 4. On or about October 5, 2018, ALQ sued Peter Kane in the Supreme Court, New York County (the "State Court Action") essentially to enforce the guaranty and, in doing so, recover the rent allegedly due and owing under the Retail Lease.[4] *Id.* Kane contends that as of January of 2018, he had paid ALQ approximately $245,650 from personal funds for monies claimed by ALQ to be due and owing under the Retail Lease Guaranty. On or about January 18, 2019, he filed a Verified Third-Party Complaint against the Debtor in the State Court Action.[5] In that complaint, Kane seeks, among other things, a determination that he is entitled to contribution from the Debtor in an amount equal to 50% of any judgment taken against Kane in the State Court Action. *See* Verified Third-Party Complaint ¶¶ 22-24, 30(a). That action was pending on the Petition Date and has been stayed.

On April 10, 2019, the Trustee presided over the Debtor's section 341(a) meeting of creditors. Objection ¶ 2.[6] The Movants assert that although ALQ's counsel attended the section

---

[3]   A copy of the Retail Lease is annexed in Exhibit A to the Objection.

[4]   Copies of the Summons and Verified Complaint filed by ALQ in the State Court Action are annexed in Exhibit A to the Objection.

[5]   A copy of the Verified Third-Party Complaint is annexed in Exhibit A to the Objection.

[6]   Bankruptcy Rule 4007 provides in substance and relevant part, that a complaint to determine the dischargeability of a debt under section 523(c) must be filed no later than 60 days after the first date set for the section 341(a) meeting of creditors, unless the Court, after hearing on notice filed before the time has expired, extends that time period. *See* Bankruptcy Rule 4007(c). The parties agree that by application of that rule, June 10, 2019 is the last day for a creditor to file a complaint to determine the dischargeability of a debt under section 523(c)

3

341(a) meeting of creditors and was given the opportunity to question the Debtor about his Chapter 7 Petition and Schedules, counsel did not have sufficient time to conduct a fulsome examination of the Debtor's assets, liabilities and financial affairs or to probe the Debtor regarding any documentary evidence. Motion ¶ 8. On May 9, 2019, the Movants filed a Notice of Presentment of their Proposed Order Authorizing the Oral Examination of, and Requiring Production of Documents By, Anthony Serignese Pursuant to Fed. R. Bankr. P. 2004 and 9016, and the Motion in support of the proposed order. The Debtor timely objected to the Motion.

Discussion

Under Rule 2004, "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). "The purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) (citing *In re Bennett Funding Grp., Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996)). Accordingly, such examination must "relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b). The Movants say that the Rule 2004 discovery they seek is related to the Debtor's involvement in and guarantee of obligations of entities that are indebted to ALQ, as well as the Debtor's indebtedness to ALQ. Motion ¶ 15.

---

of the Bankruptcy Code. That section incorporates sections 523(a)(2), (4) and (6) of the Bankruptcy Code. In relevant part, section 523(c) states, as follows:

> [T]he debtor the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6) as the case may be, of subsection (a) of this section.

11 U.S.C. § 523(c).

They also assert that the Debtor owes fiduciary duties to Alba and DeMarco in connection with his roles with Casual Hospitality and Casual Hospitality Management. *Id*. They maintain that they require the Rule 2004 discovery they are seeking "to determine whether a complaint under Section 523(a)(4) and/or (a)(6) [of the Bankruptcy Code] is appropriate here to except their claims against the Debtor from discharge." *Id.*

The Movants' stated purpose in seeking to conduct Rule 2004 discovery fits comfortably within the scope of Rule 2004(b). *See, e.g., In re Bennett Funding Grp., Inc.*, 203 B.R. at 28 (Rule 2004 "is properly used as a litigation device to determine whether there are grounds to bring an action to determine a debtor's right to discharge or the dischargeability of a particular debt."). Still, the Court will not merely rubberstamp the Motion. Rather, it is well settled that the decision to grant or deny a request for Rule 2004 discovery rests in the sound discretion of the court. *See In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) ("[a]s the permissive language of the rule suggests, the Court has the discretion to grant a request for a 2004 examination"); *see also In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001) (noting that Rule 2004 gives the court "significant" discretion). Indeed, in granting such a request, the court must make a finding of good cause for the examination. *See ePlus, Inc. v. Katz (In re Metiom, Inc.)*, 318 B.R. 263, 268 (S.D.N.Y. 2004); *see also Matter of Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) ("Although a Rule 2004 examination may be ordered *ex parte*, once a motion to quash a subpoena is made, the examiner bears the burden of proving that good cause exists for taking the requested discovery."). The Movants bear the burden of showing good cause for the examination they are seeking. *See SIPC v. BLMIS LLC (In re Madoff)*, Adv. Pro. No. 08-01789, 2014 WL 5486279, at *2 (Bankr. S.D.N.Y. Oct. 30, 2014).

5

As a general rule, "'good cause is shown if the [Rule 2004] examination is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice.'" *In re Metiom Inc.,* 318 B.R. at 268 (quoting *In re Dinubilo*, 177 B.R. 932, 943 (E.D. Cal. 1993)); *accord In re Drexel Burham Lambert Grp., Inc.*, 123 B.R 702, 712 (Bankr. S.D.N.Y. 1991). In evaluating the merits of the Motion, the Court must "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination. That documents meet the requirement of relevance does not alone demonstrate that there is good cause for requiring their production." *In re Drexel Burnham Lambert Grp., Inc*., 123 B.R. at 712. Where, as here, the Movants are seeking to conduct an examination to determine whether there are grounds under sections 523(a)(4) and (a)(6) of the Bankruptcy Code to challenge the dischargeability of the debts giving rise to their claims against the Debtor, good cause will exist to permit the examination "if, based upon information readily available to [the Movants] from sources other than a Rule 2004 examination, a reasonable bankruptcy attorney could conclude that a Rule 2004 examination of the [D]ebtor might establish grounds for a challenge to the [D]ebtor's right to discharge." *Bank One v. Hammond (In re Hammond),* 140 B.R. 197, 201 (Bankr. S.D. Ohio, 1992). As the *Hammond* court noted, "[t]he sources of information readily available to the creditor may include the debtor's own records, a reasonable inquiry at the creditor's meeting, the bankruptcy court's files, and information gained through informal discovery." *Id.*

By application of sections 523(a)(4) and (a)(6), the discharge that an individual chapter 7 debtor receives under section 727 of the Bankruptcy Code does not discharge that debtor from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny," or "for willful and malicious injury by the debtor to another entity or to the property of another

6

entity," respectively. *See* 11 U.S.C. §§ 523(a)(4) & (a)(6). In support of the Motion, the Movants merely contend, without elaboration or support, that "upon information and belief," the Debtor:

> (i) may have wrongfully removed property from Casual Hospitality, to the detriment of ALQ's rights as a creditor of Casual Hospitality;
>
> (ii) may have defalcated in his duties to Alba and DeMarco as the tax matters partner and managing member of Casual Hospitality;
>
> (iii) currently has or, in the recent past, may have had an ownership interest in one or more other restaurants not disclosed on his petition, schedules and statement of financial affairs;
>
> (iv) may not have reported all his income and/or otherwise hid assets from creditors; and/or
>
> (v) alleges to have claims against individuals and/or entities that were not identified on his petition, schedules and statement of financial affairs.

Motion ¶ 8.

The Debtor makes a number of arguments in opposing the Motion. However, as an initial matter, he contends that the Movants have not met their burden of demonstrating good cause for conducting a Rule 2004 examination because "[w]hile [they] claim the Debtor may have engaged in all manner of malfeasance, they do so only upon information and belief." Opposition ¶ 6. The Debtor argues further that "[i]t is the Movants who have the burden to prove good cause for the relief they seek, yet they have failed to produce any evidence that would lead to a conclusion that the claims they make [i.e., the their claims against the Debtor should be excepted from discharge pursuant to sections 523(a)(4) or (a)(6) of the Bankruptcy Code] have any basis in fact and deserve additional scrutiny." *Id.* During oral argument of the Motion, the Debtor's counsel made much of the fact that the Movants did not submit an affidavit in support of the Motion. The Court attaches no significance to that matter since Rule 2004 does

7

not mandate that a showing of good cause requires testimony or written statements under oath. *In re Metiom, Inc.*, 318 B.R. at 269.  However, the Court agrees with the Debtor that the Movants have not established "cause" for granting the requested relief under Bankruptcy Rule 2004.  It is not incumbent upon the Movants to identify specific instances of alleged fraud or other wrongdoing as a predicate for obtaining leave to obtain the relief they are seeking in the Motion.  *See In re Sheetz,* 452 B.R. 746, 750 (Bankr. N.D. Ind. 2011) ("Movant's argument that the trustee has failed to provide enough specific information concerning the discrepancies she wants to investigate seems to ask too much. It would, in effect, require the trustee to specifically identify particular problems before she has had the opportunity to sufficiently investigate the situation.").  However, they must produce information that is sufficient to permit a reasonably prudent bankruptcy lawyer to conclude that a Rule 2004 examination of the Debtor might establish grounds for a challenge to the Debtor's right to discharge under sections 523(a)(4) or (a)(6).  *In re Hammond*, 140 B.R. at 201 ("Good cause is established if the one seeking the Rule 2004 examination has shown that such an examination is reasonably necessary for the protection of its legitimate interests.") (citations omitted).  That is to say, they must demonstrate that there are "colorable grounds" for seeking relief against the Debtor under sections 523(a)(4) or (a)(6).  *See In re Dinubilo*, 177 B.R. at 934.  They have failed to do so.  Nothing the Movants stated in furtherance of the Motion even remotely supports the notion that they hold a claim against the Debtor based on the Debtor's alleged "willful and malicious injury" to them or their property.[7]

---

[7]  As previously noted, section 523(a)(6) provides that a debt is nondischargeable when that debt results from "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).  Since the terms "willful" and "malicious" are separate elements of a claim under section 523(a)(6), both must be satisfied before a debt will be declared nondischargeable under that section.  *See In re Greene*, 397 B.R. 688, 693 (Bankr. S.D.N.Y. 2008).  "The word 'willful' in [section 523](a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."  *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974, 140 L.Ed. 2d 90 (1998).  In contrast, a malicious injury is one that is "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will."  *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (internal quotation marks omitted).  Thus, "[t]he

NOT FOR PUBLICATION

Likewise, although the Movants assert that the Debtor owes fiduciary duties to Alba and DeMarco (Motion ¶ 15), the Motion is devoid of any information that could support a claim that the Debtor committed fraud or defalcation while acting in a fiduciary capacity.[8] In short, the Movants have not asserted a colorable claim for relief under either section 523(a)(4) or (a)(6). Accordingly, the Court sustains that aspect of the Debtor's Objection and denies the Motion on the grounds that the Movants have not established good cause for granting them relief under Rule 2004.[9] *See generally In re Stecker*, 251 B.R. 878, 880 (Bankr. S.D.N.Y. 2000) (in response to multiple requests for leave to conduct Rule 2004 examinations by the assignee of claims represented by "bad checks" the court ruled that it would not approve future Rule 2004 motions "unless there is, *at least,* some recital of some fact(s)—beyond the mere issuance of an insufficient funds check—that the debtor had engaged in some conduct that might support a colorable argument that there is conduct which would warrant a determination that a particular debt is non-dischargeable under 11 U.S.C. § 523 or that such conduct warrants the denial of a debtor's discharge under 11 U.S.C. § 727.").

---

willful element is satisfied when a person deliberately causes an injury to another, while the malicious prong requires that such action be unjustified or without just cause." *In re Greene,* 397 B.R. at 695.

[8]  Recently, in *Sanchez v. Sanchez (In re Sanchez)*, Adv. Pro. No. 14-08252 (SHL), 2016 WL 5376189 (Bankr. S.D.N.Y. Sept. 26, 2016), Judge Lane provided a useful and relevant summary of the elements of a claim under section 523(a)(4), as follows:

> "To sustain a cause of action for fraud or defalcation under [section] 523(a)(4), the plaintiff must first establish that the debtor acted while in a fiduciary capacity." *Zohlman v. Zoldan (In re Zoldan),* 226 B.R. 767, 772 (S.D.N.Y. 1998). "The mere *existence* of a fiduciary relationship is not sufficient to deny dischargeability under Section 523(a)(4)." *Zohlman v. Zoldan (In re Zoldan*), 221 B.R. 79, 87 (Bankr. S.D.N.Y. 1998). Rather, the court must find that the defendant "was '*acting* in a fiduciary capacity' with respect to the particular conduct giving rise to the liability which is claimed to be non-dischargeable." *Id*. If the debtor was acting in a fiduciary capacity, courts then examine whether the acts undertaken constitute fraud or defalcation under Section 523(a)(4). *See Zohlman*, 226 B.R. at 523(a)(4).

2016 WL 5376189 at *4.

[9]  The Court need not consider the other grounds raised by the Debtor in opposition to the Motion.

9

## Conclusion

Based on the foregoing, the Court denies the Motion.

IT IS SO ORDERED.

Dated: New York, New York
     June 3, 2019

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge